■ ALLAN S. SEXTER et al., Appellants-Respondents, v KIMMELMAN, SEXTER, WARMFLASH & LEITNER et al., Respondents-Appellants. [798 NYS2d 409]—

Judgment, Supreme Court, New York County (Edward H. Lehner, J.), entered June 25, 2004, in favor of defendants and against plaintiffs jointly and severally, and bringing up for review an order, same court and Justice, which, in a partnership accounting involving a dissolved law firm, confirmed the Special Referee's report recommending that plaintiffs be held jointly and severally liable to defendants, unanimously reversed, on the law and the facts, without costs, the judgment vacated and the matter remanded for further proceedings as to the amount of fees subject to distribution on account of the Kassover litigation, and for clarification and recalculation of the firm's assets subject to distribution, including whether the parties' capital contributions were taken into account.

The parties' partnership agreement provides that upon its termination, "the proceeds of [the firm's] then accounts receivable and accrued work in progress shall be distributed in accordance with the terms and percentages . . . as shall, from time to time, be agreed upon by the Partners hereto." The IAS court held that since there was no agreement reached on the allocation of profits for 1992, the year of the firm's dissolution, and since the agreement did not provide that a prior allocation was to remain in effect until a new allocation was agreed to, an equal allocation was mandated by Partnership Law § 40. This was error. Although it appears that the partners, in practice, tended to reallocate their respective interests on an annual basis, nothing in the partnership agreement so requires. The

above-quoted provision evinces a clear intention that the Partnership Law was not to apply on dissolution, and that the distribution was to be in accordance with the last agreement reached (*see Liddle, Robinson & Shoemaker v Shoemaker*, 309 AD2d 688, 690 [2003]). All agree that the parties' last agreement was in 1991, under which plaintiff Sexter received 25.2%, plaintiff Warmflash and defendant Leitner 26.4%, defendant Levy 12.5% and defendant Getz 9.5%.

Plaintiffs failed to satisfy their burden of showing (*see Matter of Schnare*, 191 AD2d 859, 860 [1993], *lv denied* 82 NY2d 653 [1993]) that the Voute and Davis estates were billed on an hourly basis. While Warmflash did testify to that effect, no basis exists to disturb the Special Referee's finding that his credibility in this regard was affected by a lack of documentary support (*see Nager v Panadis*, 238 AD2d 135 [1997]). The billing worksheets provided were insufficient to establish anything other than that the time spent on these matters was being recorded. Nor did plaintiffs show that any portion of the fees realized in these matters was attributable to their efforts after the firm's dissolution (*see Murov v Ades*, 12 AD3d 654 (2004). Here too, Warmflash's assertion that the majority of work was performed postdissolution was properly rejected by the Special Referee as undocumented and conclusory.

The record does not support the Special Referee's finding that the Kassover matter, a contingency fee litigation that was brought into the firm well before its dissolution, is not a firm asset. While it appears that the initial litigation was discontinued not long before the firm's dissolution, and that valuable work was performed after the firm's dissolution, it also appears that valuable work, including disclosure and a traverse hearing in the newly instituted proceeding itself, was performed prior to the dissolution, and that at least some of the fee realized by defendants should have been credited to the firm (*see id.*). In addition, the lack of specificity in the Special Referee's findings relating to the firm's assets at dissolution make it impossible to discern the evidence underlying the total amount found subject to distribution (*see Weckstein v Breitbart*, 111 AD2d 6 [1985]). Further elaboration is required in this regard, including whether the balances in the parties' capital accounts were considered. Also lacking are any findings justifying the imposition of joint liability (*cf. Matter of Seagroatt Floral Co. [Riccardi]*, 78 NY2d 439, 448 [1991]).

We do not consider the denial of prejudgment interest at this juncture. Concur—Tom, J.P., Saxe, Friedman, Marlow and Catterson, JJ.